## S06A1147. IN THE INTEREST OF A. N. et al., children.
(636 SE2d 496)

MELTON, Justice.

Following a deprivation hearing concerning A. N. and M. N., the juvenile court found both children to be deprived, and it awarded legal custody of the children to the Department of Family and Children Services (DFACS). The juvenile court then ordered, however, that physical custody be given to the maternal grandparents. DFACS filed a motion for reconsideration of this ruling, arguing, among other things, that the juvenile court was statutorily prohibited from placing legal custody in DFACS and physical custody in another party of the court's choosing. The juvenile court denied DFACS' motion, finding that it had the statutory authority to place

conditions and limitations on DFACS' legal custody, including a limitation that physical custody of the child be placed in accordance with the court's mandate. In the alternative, the juvenile court found that, even if OCGA §§ 15-11-58 and 15-11-55 prevented it from dividing custody of a deprived child in this manner, these statutory provisions violated the Equal Protection Clause of the United States Constitution. DFACS now appeals the juvenile court's rulings.

It is a longstanding rule that a trial court may not order that legal and physical custody of a deprived child be divided between DFACS and some other party unilaterally chosen by the court. See, e.g., *In the Interest of Tidwell*, 279 Ga. App. 734 (2) (632 SE2d 690) (2006); *In the Interest of C. A. C.*, 239 Ga. App. 725 (2) (522 SE2d 236) (1999); *In the Interest of J. N. T.*, 212 Ga. App. 498 (441 SE2d 918) (1994); *In the Interest of A. V. B.*, 267 Ga. 728 (2) (482 SE2d 275) (1997); *In the Interest of A. S.*, 185 Ga. App. 11 (2) (363 SE2d 325) (1987). Once legal custody of a deprived child has been granted to DFACS, any effort by the court to dictate placement of physical custody is "merely exhortatory and not binding." (Punctuation omitted.) *In the Interest of R. D.*, 141 Ga. App. 843, 844 (234 SE2d 680) (1977). Despite the consistency of this case law, the juvenile court found that amendments made to OCGA § 15-11-55 in 2003 altered this well-settled precept. A review of the language of these statutes, including the 2003 revisions, construed in pari materia with OCGA § 49-5-3 (12) (A) does not support this finding.

OCGA § 49-5-3 (12) (A) and (D) state that the term "legal custody" encompasses the "right to have the physical possession of the child or youth" and the "right to determine where and with whom [the child] shall live." It is well-settled that this definition of legal custody must be read in pari materia with those provisions of the Georgia Code relating to juvenile proceedings and the placement of deprived children. *In the Interest of R. D.*, supra, 141 Ga. App. 843. Therefore, unless some provision in the juvenile code explicitly and expressly alters the nature of legal custody as expressed in OCGA § 49-5-3 (12), the concept of legal custody must be interpreted to include the "right to determine where and with whom [the child] shall live." OCGA § 49-5-3 (12) (D).

With this in mind, the juvenile court found that OCGA § 15-11-55 (a) (2) is not controlled by this accepted definition of legal custody. This Code section provides:

> Subject to conditions and limitations as the court prescribes, [the court may] transfer temporary legal custody to any of the persons or entities described in this paragraph. Without limiting the generality of the foregoing, such conditions and limitations shall include a provision that the court shall

approve or direct the retransfer of the physical custody of the child back to the parents, guardian, or other custodian either upon the occurrence of specified circumstances or in the discretion of the court. Any such retransfer of physical custody may be made subject to such further conditions and limitations as the court prescribes, including supervision for the protection of the child.

Contrary to the trial court's interpretation, nothing in this provision allows any redefinition of legal custody as set forth in OCGA § 49-5-3 (12). To the contrary, the language of the statute supports the standard definition of legal custody.

The juvenile court nonetheless opined that one of the "conditions and limitations" that it could place on legal custody is the condition that physical custody of a deprived child be given to a party chosen by the court, not DFACS. As an initial matter, the many cases interpreting this statute, as listed above, have consistently found that a juvenile court cannot grant legal custody to DFACS and then mandate the placement of physical custody in a party of the court's choosing. The juvenile court has no authority to ignore this case law. Moreover, the explicit language of OCGA § 15-11-55 (a) (2) makes the juvenile court's interpretation of the statute untenable. The general rules of construction require that a statute should be analyzed "to make all [of] its parts harmonize and to give a sensible and intelligent effect to each part[, as i]t is not presumed that the legislature intended that any part be without meaning." (Citation omitted.) *Houston v. Lowes of Savannah, Inc.*, 235 Ga. 201, 203 (219 SE2d 115) (1975). The statute mandates that any transfer of legal custody to DFACS must include a condition "that the court shall approve or direct the retransfer of physical custody back to the parents, guardian, or other custodian." If, as the juvenile court contends, it has inherent power to determine physical custody of a deprived child from the outset, the placement of a mandatory condition on DFACS' legal custody regarding the retransfer of physical custody becomes a superfluous and meaningless statement of authority already vested in the juvenile court. If, on the other hand, the statute follows both longstanding statutory and legal precedent such that the grant of legal custody to DFACS includes the right to determine physical custody, the imposition of a mandatory condition regarding retransfer of physical custody makes sense, as it is necessary to convey to the trial court authority that it would not otherwise have over the placement of physical custody.

Furthermore, nothing in the 2003 amendment to OCGA § 15-11-55 supports the juvenile court's finding that the legislature intended to reject the definition of legal custody set forth in OCGA

§ 49-5-3. This revision added the requirement that, before transferring temporary custody in an order of disposition, "a reasonably diligent search for a parent or relative of the child or other persons who have demonstrated an ongoing commitment to the child" be conducted within 90 days from the date the child is removed from his or her home. OCGA § 15-11-55 (a) (2) (D). This language simply does not address the standard definition of legal custody in any way, either explicitly or implicitly. Therefore, it does not follow that this amendment provides any grounds to circumvent the applicable case law directly on point.

In support of its conclusions, the juvenile court also held that OCGA § 15-11-55 (c) supported its holding that it could grant legal custody to DFACS and place physical custody elsewhere. This Code section provides:

> Notwithstanding any other provision of law, the court after transferring temporary legal custody of a child to the Division of Family and Children Services within the Department of Human Resources may at any time conduct sua sponte a judicial review of the current placement plan being provided to said child. After its review the court may order the division to comply with the current placement plan, order the division to devise a new placement plan within available division resources, or make any other order relative to placement or custody outside the Department of Human Resources as the court finds to be in the best interest of the child. *Placement or a change of custody by the court outside the Department of Human Resources shall relieve the department of further responsibility for the child so placed.*

(Emphasis supplied.)

Again, contrary to the findings of the juvenile court, this provision does not authorize any deviation from the statutory definition of legal custody. To the contrary, it sets forth the clear and unambiguous legislative intent that, although a trial court may determine that it is in the best interests of a child to initially place that child outside the custody of DFACS or to change custody from DFACS to another party after DFACS has already been given custody, either of these acts will eradicate DFACS' responsibility for a child not in its custody. Nothing in this provision supports an argument that a juvenile court is not bound by the definition of legal custody as set forth in OCGA § 49-5-3 (12).

Recognizing the difficulties with its argument based on statutory construction, the juvenile court further held that, even if the statute did mandate that a grant of legal custody to DFACS prevented it from

placing physical custody with the entity of the juvenile court's choosing, the statute is unenforceable due to a violation of the Equal Protection Clause of the United States Constitution. The juvenile court maintained that no rational basis existed for providing reunification services to parents whose children were in the legal custody of DFACS, see OCGA § 15-11-58, while not providing such services to parents whose children were placed in the legal custody of "a parent or relative of the child or other persons who have demonstrated an ongoing commitment to the child." OCGA § 15-11-55 (a) (2) (D).[1]

The "protection provided in the Equal Protection Clause of the United States Constitution is coextensive with that provided in Art. I, Sec. I, Par. II of the Georgia Constitution of 1983." *Nodvin v. State Bar of Ga.*, 273 Ga. 559-560 (2) (544 SE2d 142) (2001). The doctrine of equal protection is triggered only if similarly situated parties are treated differently. If the parties in question are not so situated, there can be no violation of equal protection. See, e.g., *Palmer v. Bertrand*, 273 Ga. 475 (541 SE2d 360) (2001). In this case, the two classes addressed by the statute are deprived children who are placed in the legal custody of DFACS because there is no parent or relative committed to the child who is available for immediate placement, and deprived children who do have a committed parent or guardian available for immediate placement. These two classes are not similarly situated, and, as such, laws that treat these different classes in different manners do not violate equal protection. Id.

Even if the parties in the present matter could be considered to be similarly situated, no equal protection violation would exist. The parties are not members of a suspect class, and, as such, the rational basis standard of review must be applied to their claims. Pursuant to the rational basis test, a legislative classification must be "reasonable and not arbitrary, and rest upon some ground of difference having a fair and rational relationship to the legislation's objective, so that all similarly situated persons are treated alike. [Cit.]" *City of Atlanta v. Watson*, 267 Ga. 185, 187-188 (1) (475 SE2d 896) (1996). One goal of the laws regarding deprived children is to minimize government intervention while ensuring that the children are reared in a familial environment. See OCGA § 15-11-1. The laws in question are rationally related to the achievement of this goal because, in cases where a committed adult or relative is available for immediate placement, a deprived child may be placed with this familial figure and governmental intrusion into the child's life is kept at a minimum. When a

---

[1] OCGA § 15-11-55 (a) (2) provides that, prior to transferring temporary legal custody to DFACS, "a reasonably diligent search for a parent or relative of the child or other persons who have demonstrated an ongoing commitment to the child shall be conducted by the court and the Department of Human Resources."

child is placed with DFACS, the child is completely removed from any familial context. The need for reunification services is most urgent in this circumstance. Therefore, the laws in question do not impinge upon, much less violate, concepts of equal protection.

For all of these reasons, the rulings of the juvenile court regarding placement and custody of the deprived children in this case must be reversed, and this case is remanded for the juvenile court to determine custody in a manner consistent with this opinion.

*Judgment reversed. All the Justices concur.*

DECIDED OCTOBER 4, 2006.

*Thurbert E. Baker, Attorney General, Charissa A. Ruel, Assistant Attorney General, Billie Jean Crane*, for appellant.

*Mitchell D. White, McManus & Smith, Mary E. Cobbs, Kimberly D. Puckett, Roy E. Barnes*, for appellee.