662 S.E.2d 287 (2008)
In the Interest of P.N., et al., children.
No. A08A0704.
Court of Appeals of Georgia.
May 13, 2008.
*289 Marjorie Marie Musgrave, for Appellant.
Thurbert E. Baker, Atty. Gen., Shalen S. Nelson, Senior Asst. Atty. Gen., Elizabeth M. Williamson, Asst. Atty. Gen., Dana M. Thompson, Canton, Jeanette Leigh Soltys, Woodstock, for Appellee.
MILLER, Judge.
The mother and father (or "parents") of P.N., D.N., and D.N., minor children, entered into a consent order that found the children to be deprived, granted legal and physical custody of the children to the Cherokee County Department of Family and Children Services (the "Department"), and set forth a case plan for reuniting the children with their parents. The parents now appeal from an order of the Juvenile Court of Cherokee County requiring that they pay a portion of certain fees charged for services mandated under the case plan, asserting that such a requirement violates their constitutional right to equal protection. The parents further assert that the trial court refused to consider their equal protection argument, thereby violating their constitutional right to due process. We disagree and affirm.
"This appeal presents a question of law, which we review de novo. [Cit.]" Burdett v. State, 285 Ga.App. 571, 646 S.E.2d 748 (2007). So viewed, the evidence shows that after the Department brought a deprivation action with respect to the children, the parents consented to an order that contained a case plan for reunifying them with the children. That case plan required, inter alia, that each parent undergo psychological, anger management, and substance abuse assessments and comply with any treatment recommendations resulting therefrom. Approximately six weeks later, the Department informed the parents that they would be required to pay one-half of the costs of these services, which the Department estimated to be approximately $4,200. The Department further informed the parents that they would need to pay their estimated share of these costs ($2,100) in advance, before the assessments or any treatment could be performed.
Counsel for the mother then requested a hearing with the juvenile court on the issue of whether the parents could be required to pay for a portion of the services mandated by the Department. At that hearing, counsel for the mother noted that the deprivation order was based, in part, on the parents' financial instability. In light of this fact, counsel argued that the required payment of $2,100 represented an insurmountable barrier to the parents' complying with their case plan and regaining custody of the children. She therefore asked that if the Department was unable to pay for the services mandated by the case plan, it be removed from the case.
Counsel for the father stated that he wanted evidence to be presented as to whether the Department required such payment from other families, and if this requirement was being applied in a consistent fashion. The trial court, however, stated that it would not consider what the Department did with respect to other cases.
Following the arguments of counsel and statements by the children's court-appointed special advocate ("CASA") and guardian ad litem, and after reviewing the parents' financial affidavit, the trial court found that it was unfair to require the parents to pay $2,100 before proceeding with their case plan. It therefore ordered the Department to pay the costs of all services, but ordered the parents to make monthly payments to the Department in the amount of $300 as partial reimbursement *290 for such costs. This appeal followed.[1]
1. The parents first argue that the trial court violated their constitutional rights to procedural due process by refusing to consider whether the requirement that they pay for part of the services mandated by their case plan violated their constitutional rights to equal protection. We disagree.
The right of procedural due process entitles an individual to notice and a hearing. In the Interest of D.T., 284 Ga.App. 336, 341(3)(a), 643 S.E.2d 842 (2007). See also United States v. Raddatz, 447 U.S. 667, 677(IV)(A), 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) ("The guarantees of due process call for a hearing appropriate to the nature of the case.") (citation and punctuation omitted). Here, the parents requested and received a hearing on the issue of whether they should be required to pay for a portion of the assessment and counseling services mandated by their case plan. Moreover, they received relief from the trial court, in that they were relieved of the burden of having to pay $2,100 in advance of receiving the required services. Thus, their appeal is not based upon a deprivation of the hearing guaranteed to them, but on the trial court's refusal to consider the equal protection arguments offered by their counsel.
Due process does not guarantee a litigant the right to have all arguments considered at a particular hearing, however, regardless of the merits of such arguments. Indeed, trial courts are vested with broad discretion in limiting both the time and scope of counsel's arguments, and are free to reject arguments they believe are irrelevant or without merit. See Duggan v. Duggan-Schlitz, 246 Ga.App. 127, 128, 539 S.E.2d 840 (2000) ("We note the general rule that a trial court has discretion in regulating and controlling its business.") (footnote omitted); CRS Sirrine, Inc. v. Dravo Corp., 213 Ga. App. 710, 714, 445 S.E.2d 782 (1994) (noting that "parties are not entitled to present their cases ad infinitum"); Anderson v. Anderson, 235 Ga. 115, 116, 218 S.E.2d 846 (1975) ("A trial judge has discretion to control the conduct of a custody hearing. He may rule certain evidence to be inadmissible and certain argument to be out of order."). Accordingly, the mere fact that the trial court declined to consider any equal protection arguments counsel attempted to make did not violate the parents' right to due process.
2. The parents next assert that the trial court erred in failing to find that requiring them to pay for a portion of the mandated services violated their constitutional right to equal protection. The State argues that the parents failed to preserve this issue for appeal, noting that neither parent's attorney raised an equal protection claim at the hearing. Rather, counsel for the father merely stated that he was concerned that the Department might not be applying its financial contribution requirement "consistently," and that the parents wanted testimony as to whether the Department was "picking and choosing" which cases it would fund, in whole or in part. The parents assert that these statements were sufficient to preserve their equal protection claims for purposes of appeal.
Regardless of whether the parents properly preserved their equal protection claims, however, their brief fails to set forth an equal protection violation. Such a violation can occur only where the government draws a classification between "similarly situated parties" and then treats one class differently from the other. In the Interest of A.N., 281 Ga. 58, 62, 636 S.E.2d 496 (2006). "If the parties in question are not [similarly] situated, there can be no violation of equal protection." (Citation omitted.) Id.
Here, the parents' equal protection argument is based upon the assertion that they are similarly situated to all parents whose children have been adjudicated deprived based upon the family's financial instability, but not all of those parents have *291 been required to contribute financially to their individual case plans. That assertion, standing alone, however, is insufficient to support an equal protection claim.
The classification complained of in this case is between those parents who are required to contribute financially toward services mandated under a Department case management plan and those who are not required to do so. At the hearing, counsel for the Department indicated that what category a family was placed in depended upon whether, after the Department reviewed an individual family's finances, it determined that the parents could afford to make such a contribution. If the Department determined that the parents could contribute financially, it would then decide the amount they could afford to pay. By definition, therefore, the Department is not drawing a distinction between similarly situated parties  i.e., a family that can afford to contribute financially is not similarly situated to a family who cannot afford to do so.[2] See In the Interest of A.N., supra, 281 Ga. at 62, 636 S.E.2d 496.
Finally, even if the parents could show that they were similarly situated to others who were not required to pay for a portion of Department-mandated services, they still could not state an equal protection violation. Because the parents are not members of a suspect class, their equal protection claim must be judged by applying the "rational relationship" test. In the Interest of A.N., supra, 281 Ga. at 62, 636 S.E.2d 496. See also City of Roswell v. Fellowship Christian School, 281 Ga. 767, 770(2), 642 S.E.2d 824 (2007). Under that test, a governmental classification must be rationally related to a legitimate governmental purpose. See Quarterman v. State, 282 Ga. 383, 385(1), 651 S.E.2d 32 (2007).
Here, counsel for the Department stated that it required parents who were financially able to contribute toward the services they were to receive because the parents needed to take responsibility for the conduct that had led to the finding of deprivation. Similarly, the CASA indicated that parents who had to bear at least some financial responsibility for the services required under their case plan were more likely to take those requirements seriously. Logically, there is a greater likelihood of success in those cases where parents are required to make a financial contribution.
We find that the goals of requiring parents to take responsibility for conduct that harmed their children and of increasing the likelihood of success for family reunification represent legitimate governmental purposes. See In the Interest of A.N., supra, 281 Ga. at 62, 636 S.E.2d 496. Additionally, the Department's method of furthering these goals appears to be a case-by-case analysis as to whether a particular family can afford to contribute financially and, if so, how much. This represents a rational means of effectuating these goals, particularly in light of the fact that parents are allowed to seek judicial review of any financial requirements placed upon them.
For the reasons set forth above, we affirm the order of the trial court requiring that the parents contribute financially toward the services mandated by their case plan.
Judgment affirmed.
BLACKBURN, P.J., and ELLINGTON, J., concur.
NOTES
[1] The record shows that, based upon the parents' progress in meeting the goals of their case plan, the juvenile court awarded them legal and physical custody of the children by order dated September 25, 2007, nunc pro tunc to August 22, 2007, with the Department to provide follow-up services.
[2] Notably, the parents here do not challenge the trial court's finding that they were able to pay for part of the services mandated by their case plan.