A08A1683. IN THE INTEREST OF R. F. et al., children.
(673 SE2d 108)

MILLER, Chief Judge.

The biological mother of R. F., A. F., C. F., S. F., and G. F. appeals from an order of the juvenile court requiring her to pay a total of $2,500 per month in child support. The mother asserts that the trial court erred (1) by treating her petition as a motion for modification of the temporary support award previously entered by the juvenile court, as opposed to a petition for a final child support award; (2) by ignoring the statutory guidelines for determining an award of child support; (3) by including gift income the mother receives from the children's maternal grandmother in the mother's gross monthly income; and (4) by failing to apply the statutory guidelines found in OCGA § 19-6-15 to modify its original child support award. Discerning no error, we affirm.

The mother's first two enumerations of error represent questions of law, which we review de novo. *In the Interest of P. N.*, 291 Ga. App. 512 (662 SE2d 287) (2008). We review the factual findings supporting the juvenile court's order for clear error and review the refusal to modify the support award for an abuse of discretion. See *Hamlin v. Ramey*, 291 Ga. App. 222, 225 (1) (661 SE2d 593) (2008).

The record shows that on November 12, 2004, the juvenile court entered an order, nunc pro tunc to October 14, 2004, finding R. F., A. F., C. F., S. F., and G. F. to be deprived children under OCGA § 15-11-58 (a). The court awarded temporary legal custody of A. F., C. F., and G. F. to their paternal uncle, Kerry F., and awarded temporary legal custody of R. F. and S. F. to another paternal uncle, Sean F.

On April 18, 2005, nunc pro tunc to March 17, 2005, the juvenile court entered a nonreunification order with respect to the children's biological mother. That order required the biological mother and the biological father to each pay $70 per month per child in child support. The juvenile court further ordered each of the biological parents to respond to the State's discovery requests regarding his or her financial status and to complete a domestic relations financial affidavit in advance of a support hearing, scheduled for April 28, 2005.

At the time of the April 28, 2005 support hearing, neither biological parent had complied with the juvenile court's order to respond to the State's financial discovery requests and neither had

completed a financial affidavit. Therefore, after the parties stipulated that the biological father had an annual gross income of approximately $21,000, the juvenile court heard evidence regarding the financial status of the biological mother. That evidence showed that the biological mother and her mother (the "maternal grandmother") were the sole beneficiaries of an income trust, then valued at approximately $2 million. The maternal grandmother testified that she was the sole trustee of that trust, and she had complete discretion to determine the amount of income she dispensed from the same. According to the maternal grandmother, the mother was paid between $15,000 and $16,000 in annual income from the trust, and her monthly child support payments were made from funds that would otherwise have been paid to the mother as trust income. Additional trust proceeds had recently been used to pay for extensive dental work and cosmetic surgery for the biological mother.

The evidence further showed that the biological mother owned a car and co-owned a house, both of which were paid for. The house was valued at $375,000 and was then currently on the market. After the house sold, the biological mother planned to use some of the proceeds to purchase another residence for herself and her husband and to use the rest to help support the children. The biological mother's only current expense was approximately $900 per month for temporary, rental housing, and she had recently spent $5,000 to purchase a new motorcycle for her husband.

Following this hearing, the juvenile court entered an order captioned "Continued Non-Reunification Order Regarding the Mother and Temporary Support Order." That order, entered May 9, 2005, nunc pro tunc to April 28, 2005, continued the temporary legal custody of A. F., C. F., and G. F. with their paternal uncle Kerry F. and continued the temporary legal custody of R. F. and S. F. with their paternal uncle Sean F. The order further required the biological father to pay $70 per month per child in support and required the biological mother to pay $500 per month per child in support.

On July 30, 2007, the biological mother filed a petition for modification of the child support order, requesting that her support obligation be modified "so as to comply with the current [statutory] guidelines." The juvenile court held a hearing on this petition on November 20, 2007, at which time the biological mother amended her petition to request that the juvenile court "enter a Final Order of Support consistent with OCGA § 19-6-15."

At the hearing, the biological mother testified that she received $3,244 per month in trust income and that, in addition, the maternal grandmother paid her child support obligation of $2,500 per month on her behalf. The biological mother further stated that she had

recently given birth to another child, who lived with her and that she and her husband lived in an apartment, for which they paid an unspecified amount in rent. Although the biological mother had not worked since the original support hearing in April 2005, she had recently purchased her husband both a laptop computer and other electronics.

Following the hearing, the juvenile court entered an order on January 29, 2008, nunc pro tunc to November 20, 2007, denying the biological mother's request for a modification of her child support obligations. This appeal followed.

1. OCGA § 19-6-15 defines a "final child support order" as the "presumptive amount of child support [calculated under the guidelines contained within the statute] adjusted by any [statutorily permitted] deviations" from those guidelines. OCGA § 19-6-15 (a) (11). On appeal, the mother asserts that the juvenile court erred in failing to treat her petition as one for a final child support order under OCGA § 19-6-15. We disagree.

As a threshold matter, it appears that the juvenile court was without jurisdiction to enter a final award of child support. Specifically, OCGA § 15-11-28 (c) (2) (A) provides that "the juvenile court upon a finding of deprivation *shall have jurisdiction to order temporary child support* for such child to be paid by that person or those persons determined to be legally obligated to support such child." (Emphasis supplied.)

Moreover, although the child support guidelines contained within OCGA § 19-6-15 apply as a "rebuttable presumption in all legal proceedings involving the child support responsibility of a parent" (OCGA § 19-6-15 (c) (1)), the statute does not contemplate that a "final order of child support" is something that a party moves for separately, independent of all other issues in the case. Rather, a "final order of child support" is entered in conjunction with, or as part of, the final order entered disposing of the case.

Thus, assuming that the juvenile court did have jurisdiction to enter a final order of child support in conjunction with a deprivation proceeding, such an award would be made as part of the final disposition of that case, i.e., in an order approving of a permanency plan or granting permanent legal custody of the minor child to a person other than the parent. See OCGA §§ 15-11-58; 15-11-58.1. No such final disposition has occurred in the current proceeding. Specifically, the record reflects that there has been no permanency plan sought or proposed by the parties or entered or approved by the juvenile court. Rather, the custody of the minor children has been placed temporarily with their paternal uncles, and the juvenile court still has jurisdiction over the case. See, e.g., *In the Interest of K. B.*, 188 Ga. App. 199, 201 (2) (372 SE2d 476) (1988) ("The expressed

legislative intent is one of continuing jurisdiction by a juvenile court over its orders, particularly during the statutory duration of an order's length."). Given the lack of a final disposition of the underlying deprivation proceedings, the juvenile court did not err in declining to treat the mother's petition as one for a final order of child support.

2. The mother next argues that, even assuming that the juvenile court was entering only a temporary child support order, it nevertheless erred in failing to apply the statutory guidelines found in OCGA § 19-6-15 to determine whether its prior award of child support should be modified downward. See OCGA § 15-11-28 (c) (2) (A) ("In determining such temporary child support, the juvenile court shall apply the child support guidelines provided in Code Section 19-6-15."). What the mother fails to acknowledge, however, is that the current guidelines set forth in OCGA § 19-6-15 apply only to child support orders entered after January 1, 2007. See *Eubanks v. Rabon*, 281 Ga. 708, 710, n. 3 (642 SE2d 652) (2007); *Hamlin*, supra, 291 Ga. App. at 223 (1). The order at issue in this case, however, was entered on May 9, 2005, prior to the time the current guidelines even existed. Accordingly, the juvenile court was obligated to apply those guidelines only if it was modifying its original child support order. As discussed below in Division 4, however, the mother could not prove that she was entitled to such a modification.

3. As noted above, it is the maternal grandmother who currently pays the child support obligations of the mother, with those funds coming from trust proceeds that presumably would otherwise be payable to the mother. On appeal, the mother asserts that the juvenile court erred in treating these payments, which the mother characterizes as a "gift" to her, as part of the mother's gross monthly income. This argument is without merit.

We first note that while the mother claims it is "illogical" to treat such "gifts" as income, she offers no argument or legal authority to explain why the juvenile court's classification of these payments, made on behalf of the mother, as income received by the mother constitutes legal error. More importantly, however, we note that OCGA § 19-6-15 specifically provides that, when determining a parent's child support obligations, a trial court shall include both trust income and "[g]ifts that consist of cash" in calculating a parent's gross income. OCGA § 19-6-15 (f) (1) (A) (x), (xvii). Accordingly, in deciding the mother's petition, the juvenile court appropriately considered the child support payments made on behalf of the mother.

4. Nor do we find any merit in the mother's claim that the juvenile court erred in refusing to modify the amount of child support she is required to pay. Under OCGA § 19-6-15 (k) (1), a

YALE LAW LIBRARY

parent is not entitled to a modification of a child support award unless she can first show "a substantial change in either [the] parent's income and financial status or the needs of the child." See also *Wingard v. Paris*, 270 Ga. 439 (511 SE2d 167) (1999) ("The showing of a change in financial status or a change in the needs of the child ... is a *threshold* requirement. [Cit.]") (emphasis in original).

(a) The mother points to the juvenile court's finding that one of the children had increased educational expenses and argues that this finding of a "substantial change in the needs of the child" required the trial court to apply the statutory guidelines found in OCGA § 19-6-15 to modify its original child support award. This argument is, at best, spurious.

The mother's petition requested a downward modification of her child support obligations. To be entitled to such a modification based upon a change in the needs of one or more of her children, therefore, the mother bore the burden of proving that such a change had caused a decrease in the expenditures required for the children. The mother cannot point to a finding that the financial needs of the children have increased to meet this burden and thereby trigger the application of the statutory guidelines. In other words, the fact that the needs of the children have increased cannot serve as the basis for decreasing the amount of child support a parent is obligated to pay.

(b) The mother further asserts that the trial court erred in finding no substantial change in her income or economic status warranting a downward modification of her support obligation. In making this argument, the mother ignores the evidence showing that her monthly income had increased by approximately $2,000 since the time of the original support hearing. Instead, she points to her testimony that some of the trust funds were "gone," that the maternal grandmother had a significant amount of debt, and that the maternal grandmother could no longer make payments from the principal of the trust. Given that the mother apparently introduced no documentary evidence to support these assertions, however, we cannot say that the juvenile court erred in disregarding this self-serving testimony, particularly in light of the fact that child support payments were being made and in light of the mother's lifestyle.

To further support her claim of a detrimental change in her economic status, the mother points to her testimony that she now has to pay rent on an apartment, whereas she had previously owned a home. Again, however, we note that there was no testimony as to the amount of that rent or as to how the current rent compared with the $900 monthly rent the mother was paying at the time of the original support hearing. Nor did the mother offer any evidence as to what she had done with the proceeds from the presumed sale of her

house, worth $375,000. Accordingly, the juvenile court did not err in finding that the mother had failed to prove a change in her income or economic status that would entitle her to a downward modification of her child support obligations.

For the reasons set forth above, we affirm the order of the juvenile court denying the mother's petition for a modification of her child support obligations.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED JANUARY 28, 2009 — 

*Douglas N. Fox*, for appellant.
*Larry H. Tatum, Debra W. Hale, David W. White, Ashley A. Stinson*, for appellee.