**SECOND DIVISION**
**MILLER, P. J.,**
**BROWN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 26, 2019**

# In the Court of Appeals of Georgia

A18A2092. IN THE INTEREST OF A. H., a child.

BROWN, Judge.

The Department of Family and Children Services ("DFCS") appeals an order of the Douglas County Juvenile Court prohibiting DFCS from removing A. H., a dependent child, from her current foster parents. DFCS asserts that the juvenile court erred by infringing on DFCS's right to dictate placement of A. H. as her legal custodian. For the reasons that follow, we vacate the juvenile court's order and remand the case with further instruction.

The record shows that A. H. was placed in the care of DFCS on May 28, 2016 — the day after she was born — due to the biological mother's positive drug screen at birth, as well as A. H.'s positive drug screen and diagnosis of neonatal abstinence syndrome. The juvenile court entered an order on May 31, 2016, nunc pro tunc to

May 28, 2016, adjudicating A. H. as dependent and placing her in the temporary legal custody of DFCS. After spending a period of time in the hospital, A. H. was placed with the Suttons, the same family fostering her four older half-siblings. At the time, the Suttons were in the process of adopting the four older children, but the adoption was delayed due to required corrective actions after allegations arose that Mr. Sutton utilized physical punishment and Mrs. Sutton had exhibited aggressive behavior toward the children.

In 2017, DFCS discovered another potential adoptive placement for A. H. and her younger brother[1] with paternal relatives, the Allens. The Suttons moved to intervene in the juvenile court proceedings involving A. H. and her younger brother on October 9, 2017. The Suttons also filed a motion for disposition placement, requesting that the juvenile court grant them temporary and/or permanent custody of both children. On November 22, 2017, the juvenile court entered an order terminating the biological mother and father's parental rights to A. H. In December of 2017, the Suttons' adoption of the four older children was approved, and A. H.'s younger brother was placed with the Allens.

---

[1] A. H.'s younger brother was born on May 24, 2017, and was also placed in foster care.

After allowing the Suttons to intervene in the proceedings involving A. H., the juvenile court held a hearing on March 6, 2018, to address the issue of A. H.'s placement. DFCS sought to have A. H. placed with the Allens and her younger brother due to the allegations previously raised against the Suttons. Additionally, DFCS voiced concerns about the Suttons' ability to manage A. H. in addition to the four older half-siblings, all of whom had serious behavioral problems and had been diagnosed with reactive attachment disorder ("RAD"). The Suttons asserted that A. H. should remain in their home.

While the juvenile court "[did] not disagree that the [Allens] are in a better position to meet the needs of [A. H.]," the juvenile court nonetheless granted the Suttons' motion for placement and prohibited the removal of A. H. from their home, "finding that it is in the child's best interests to remain in the only family she has ever known." In its order, the court also found the following:

> [T]he risk of causing Reactive Attachment Disorder [in A. H.] is too great to ignore. This is, in fact, the diagnosis for some of the [older] half[-]siblings and the bases[sic] for the concerns about their high level of needs as some of the [half-siblings] have been kicked out of daycare indicating serious behavioral problems. In addition to behaviors at school and in daycare, the half[-]siblings have issues with physical aggression toward one another. The Court does not agree with [DFCS]'s

3

position that placement with a full sibling is required as opposed to half[-]siblings with whom she is bonded and attached despite their diagnoses and behaviors.[2]

In response to DFCS's concern that placing a fifth child with the Suttons could be too great of a burden considering the needs of the four older children, the juvenile court found that "[DFCS] knew the needs of the children at the time of [A. H.'s initial] placement."

On appeal, DFCS argues that the juvenile court erred by ordering placement of A. H. with the Suttons when DFCS retains legal custody of A. H. The Suttons contend that the juvenile court had the authority to dictate placement and legal custody of A. H. pursuant to OCGA § 15-11-212 (d)[3] and that the legal effect of the

---

[2] We note that the juvenile court, in reaching its decision, relied heavily upon the risk of A. H. developing RAD if she were removed from the Suttons. While there is evidence that the older four siblings suffer from RAD, nothing in the record before this Court supports that A. H. has been diagnosed with RAD or is even at risk for RAD.

[3] OCGA § 15-11-212 (d) provides as follows:

After transferring temporary legal custody of a child adjudicated as a dependent child to DFCS, the court may at any time conduct sua sponte a judicial review of the current placement plan being provided to such child. After its review, the court may order DFCS to comply with the

4

order is a change of custody from DFCS to the Suttons. We need not reach either of

these arguments because we find that the juvenile court did not apply the proper

statute, OCGA § 15-11-321, which provides in pertinent part:

> When a court enters an order terminating the parental rights of a parent
> or accepts a parent's voluntary surrender of parental rights, . . . a
> placement may be made only if the court finds that such placement is in
> the best interests of the child and in accordance with such child's court
> approved permanency plan created pursuant to Code Sections 15-11-231
> and 15-11-232. In determining which placement is in a child's best
> interests, the court *shall initially attempt to place the child with an adult*
> *who is a relative or fictive kin, if such individual is willing and found by*
> *the court to be qualified to receive and care for such child.* In
> determining which placement is in a child's best interests, the court *shall*
> enter findings of fact reflecting its consideration of the following: (1)

---

> current placement plan, order DFCS to devise a new placement plan, or
> make any other order relative to placement or custody outside DFCS as
> the court finds to be in the best interests of such child. Placement or a
> change of custody by the court outside DFCS shall relieve DFCS of
> further responsibility for such child except for any provision of services
> ordered by the court to ensure the continuation of reunification services
> to such child's family when appropriate.

This statute, and prior analogous provisions, have only been applied in the context
of pre-termination cases. See, e.g., *In the Interest of A. N.*, 281 Ga. 58, 61 (636 SE2d
496) (2006); *In the Interest of B. K.*, 326 Ga. App. 56, 57 (755 SE2d 863) (2014).

5

Such child's need for a placement that offers the greatest degree of legal permanence and security; (2) The least disruptive placement for such child; (3) Such child's sense of attachment and need for continuity of relationships; (4) The value of biological and familial connections; and (5) Any other factors the court deems relevant to its determination.

(Emphasis supplied.) While the juvenile court does refer to "the child's best interests" and make findings in its order relevant to factors (2), (3), and (4), it does not cite OCGA § 15-11-321 or fully consider all five of the factors therein.[4] Accordingly, we vacate the juvenile court's order and remand the case with direction that the juvenile court properly consider and address the factors set forth in OCGA § 15-11-321. See, e.g., *In the Interest of S. P.*, 336 Ga. App. 488, 501-502 (3) (784 SE2d 846) (2016). See also *In the Interest of J. C. W.*, 311 Ga. App. 894 (717 SE2d 512) (2011) (vacating order and remanding case to juvenile court because order did not contain the prerequisite findings in support of its custody ruling).

*Judgment vacated and case remanded with direction. Miller, P. J., and Goss, J., concur.*

---

[4] In fact, the juvenile court does not reference any statute in its order.