## A11A0933. DUNBAR v. ERTTER et al.

(718 SE2d 350)

ANDREWS, Judge.

Denise Dunbar is the maternal grandmother of A. L., a minor child born in May 2006 whose parents are deceased. After the Juvenile Court of Coweta County found the child deprived and gave Dunbar long-term custody pursuant to OCGA § 15-11-58 (i), the Superior Court of Cobb County entered an order on a petition for custody brought by Shannon and Michael Ertter,[1] the child's aunt and uncle, which granted permanent custody of the child to the Ertters. We agree with Dunbar that the superior court erred by giving custody of the child to the Ertters while the juvenile court's prior custody order in the deprivation proceeding was unchallenged and still in effect.

Pursuant to a deprivation proceeding commenced on June 27, 2008, the juvenile court found that the minor child's parents were deceased;[2] gave temporary custody of the child to the Coweta County Department of Family and Children Services (DFACS) by order dated July 29, 2008; and on October 10, 2008, ordered that long-term custody of the child (subject to periodic review) be given to Dunbar until the child's eighteenth birthday pursuant to OCGA § 15-11-58 (i). On August 5, 2008, while the deprivation proceeding was pending, the Ertters filed a petition in the Superior Court of Cobb County, the county where Dunbar resided, seeking permanent custody of the child. When they filed the superior court petition, the Ertters knew about the pending deprivation petition and knew the juvenile court had given temporary custody of the child to DFACS. According to Ms. Ertter, she contacted DFACS in early July; told the child's caseworker to consider her as a relative willing to take custody of the child in the deprivation proceeding; and was informed that her mother, Dunbar, had indicated a willingness to take custody and was being favorably considered. On September 17, 2008, the juvenile court held a hearing (at which the Ertters did not appear) to consider a DFACS motion to transfer custody of the child to Dunbar, and on October 10, 2008, the juvenile court entered an order granting the motion and giving Dunbar long-term custody until the child's eighteenth birthday. OCGA § 15-11-58 (i). On December 16, 2009, the Ertters amended their superior court petition to seek a change of custody from Dunbar, and on June 17, 2010, the superior court ordered that permanent custody of the child be given to the

---

[1] Shannon Ertter is the deceased mother's sister and Dunbar's daughter.

[2] The juvenile court found that the child's father killed the child's mother and committed suicide.

Ertters based on the best interest of the child.

In the deprivation action, over which the juvenile court had exclusive original jurisdiction pursuant to OCGA § 15-11-28 (a) (1) (C), the Court granted Dunbar long-term custody of the child until the child's eighteenth birthday subject to periodic review as set forth in OCGA § 15-11-58 (i). Accordingly, the juvenile court's long-term custody order remained in effect when the superior court entered its permanent custody order. Compare OCGA § 15-11-58.1 (providing that "*[e]xcept as otherwise provided by law*, an order of disposition in a proceeding involving deprivation, except an order involving the appointment of a guardian of the person or property of a child, continues in force for not more than two years"). Pursuant to the juvenile court order, Dunbar obtained long-term physical custody of the child, but not permanent custody. OCGA §§ 15-11-13; 15-11-58 (i); *Douglas v. Douglas*, 285 Ga. 548, 549 (678 SE2d 904) (2009) (juvenile court does not have authority to award permanent custody absent a transfer order from the superior court; OCGA § 15-11-28 (c) (1)). The Ertters brought their action seeking permanent custody in the Superior Court of Cobb County, the county where the physical custodian, Dunbar, resided with the child.[3] See *Gordon v. Gordon*, 269 Ga. App. 224, 225 (603 SE2d 732) (2004). The superior court had original jurisdiction over contests for permanent child custody in the nature of a habeas corpus between parents, parents and third parties, or between parties who are not parents. See *In re J. R. T.*, 233 Ga. 204, 205 (210 SE2d 684) (1974); *In the Interest of K. R. S.*, 253 Ga. App. 678-679 (560 SE2d 292) (2002). Nevertheless, because the prior juvenile court order in this case giving long-term physical custody to Dunbar remained in effect, we find that the superior court erred by exercising jurisdiction in the custody dispute. *West v. Cobb County Dept. of Family &c.*, 243 Ga. 425 (254 SE2d 373) (1979); *Segars v. State of Ga.*, 309 Ga. App. 732 (710 SE2d 916) (2011) (superior court correctly refused to exercise jurisdiction in custody dispute in light of prior existing juvenile court custody order in deprivation case); compare *Wiepert v. Stover*, 298 Ga. App. 683 (680 SE2d 707) (2009) (superior court properly exercised jurisdiction where a deprivation petition was "apparently pending" in juvenile court, but was not in the record; it was not clear why DFACS had custody of the child; DFACS moved in juvenile court to be divested of

---

[3] We note that the superior court action was not brought in Cobb County pursuant to the Georgia Child Custody Intrastate Jurisdiction Act (OCGA § 19-9-20 et seq.) because that Act directs where complaints must be filed which seek a change of custody by or against the "legal custodian" of the child. OCGA § 19-9-23 (a), (b); *Gordon*, 269 Ga. App. at 225. A "legal custodian" is defined under the Act as a person, including but not limited to a parent, who has been awarded permanent custody of a child by court order. OCGA § 19-9-22 (2).

custody and dismiss the case; and juvenile court declined to exercise jurisdiction). "The statutory procedure by which [the Ertters] may seek relief is set out at [OCGA § 15-11-40]."[4] *West*, 243 Ga. at 426.

*Judgment reversed. Smith, P. J., Phipps, P. J., and Dillard, J., concur. Barnes, P. J., Mikell and McFadden, JJ., dissent.*

McFADDEN, Judge, dissenting.

Because I believe that the superior court did not err by exercising its jurisdiction over the Ertters' petition for permanent custody of A. L., I respectfully dissent.

As the majority recognizes, a superior court has jurisdiction over a petition for permanent custody of a child, and a juvenile court cannot grant permanent custody absent a transfer order from the superior court. See OCGA § 15-11-28 (c) (1); *Douglas v. Douglas*, 285 Ga. 548, 549 (1) (678 SE2d 904) (2009). In this case, the juvenile court in which the deprivation action was brought and the superior court in which the petition for permanent custody was brought are in two different circuits. Accordingly, this case does not involve a transfer order; and the juvenile court could not grant permanent custody. Nevertheless, the majority holds that the superior court could not exercise its jurisdiction over the case, either. Although the majority suggests that the Ertters could instead bring their claim under OCGA § 15-11-40, that Code section merely authorizes the juvenile court to modify its rulings; it does not allow the juvenile court to grant the permanent custody sought by the Ertters in this case.

The practical result of the majority opinion is that *no* court may exercise jurisdiction to consider and rule on a petition for permanent custody of A. L. during the duration of the order granting long-term temporary custody to Dunbar, an order not scheduled to expire until 2024, when the child turns 18. By its nature, an award of permanent custody provides more stability and permanency for a child. An award of permanent custody constitutes a final adjudication of the rights of the parties. *Pace v. Pace*, 287 Ga. 899, 900 (700 SE2d 571) (2010). In contrast, an award of long-term temporary custody is subject to periodic review and possible modification. See OCGA § 15-11-58 (i) (2). See generally *In the Interest of A. H.*, 278 Ga. App. 192, 197 (5) (628 SE2d 626) (2006) (discussing instability inherent in long-term temporary custody arrangement).

A juvenile court's decision to enter a long-term temporary custody order pursuant to OCGA § 15-11-58 (i) should not prevent a

---

[4] We render no opinion on the juvenile court's order in the deprivation case entered pursuant to OCGA § 15-11-58.

superior court from later granting permanent custody of the child to an appropriate person or persons. And the authority cited by the majority does not require such a prohibition.

In *West v. Cobb County Dept. of Family &c.*, 243 Ga. 425 (254 SE2d 373) (1979), the Supreme Court of Georgia held that the superior court lacked jurisdiction over the custody petition of a father, who had participated in a deprivation proceeding that had resulted in the juvenile court's ruling that his child was deprived, during the two-year pendency of an order placing the child in the temporary custody of the Department of Family and Children Services. The decision in *West* did not foreclose the future possibility that the father (or someone else) could later obtain permanent custody of the child. Instead, it prevented the father from essentially making an end-run around the juvenile court's deprivation proceeding, which presumedly had addressed whether the child should be placed in the father's custody.

Here, in contrast, the Ertters were not parties to the deprivation proceedings in the juvenile court. They were not afforded notice or opportunity to be heard in the juvenile court proceeding. See OCGA §§ 15-11-55.1 (listing persons, other than parties, entitled to notice of deprivation hearing); 15-11-78 (2008) (version of Code section in effect at time of A. L.'s deprivation proceeding; excluding public from deprivation hearings except in certain enumerated circumstances). Consequently, the juvenile court's order granting long-term temporary custody of the child to Dunbar did not address the central contention in the Ertters' petition for permanent custody: that granting permanent custody of A. L. to the Ertters would be in her best interest. Instead, the juvenile court determined, as required by OCGA § 15-11-58 (i) (1), that referral for termination of parental rights and adoption was not in A. L.'s best interest, and it found that a placement with Dunbar would "provide a family home because . . . [t]he child and mother lived with . . . Dunbar prior to the mother's death and the child is familiar with . . . Dunbar and doing well in her custody." No findings or conclusions relating to the Ertters were reached. And because the parties to the juvenile proceedings were not the same as the parties to the custody action, principles of abatement did not apply. Cf. OCGA § 9-2-44 (a) (a former recovery or the pendency of a former action for the same cause of action between the same parties in the same or any other court having jurisdiction shall be a good cause of abatement).

Thus, unlike the father's petition in *West*, the Ertters' petition cannot be viewed as an end-run around the juvenile court's order. And, unlike *West*, no possibility exists for a grant of permanent custody after the expiration of the temporary custody order in this case, because the temporary custody order is not set to expire until

A. L. reaches the age of majority.

 *Segars v. State of Ga.*, 309 Ga. App. 732 (710 SE2d 916) (2011), likewise is distinguishable from this case and does not compel the result reached by the majority. In *Segars*, we upheld a superior court's decision not to exercise jurisdiction over a custody dispute, where the juvenile court had not yet ruled on a termination proceeding pending before it. Id. The petitioners for custody in *Segars* had unsuccessfully sought to intervene in the juvenile court deprivation proceeding; they had not sought to intervene in the termination proceeding. Id. at 733. We noted that, by taking jurisdiction of the deprivation action and, later, the termination action, the juvenile court was the first court to exercise its concurrent jurisdiction over the issues of custody that arose pursuant to OCGA §§ 15-11-58 (involving placement of child where reunification is not in child's best interest) and 15-11-103 (involving placement of child following termination order). *Segars*, supra at 735-736. Pertinently, however, we distinguished the facts presented in *Segars* from the circumstance where "a deprivation action in juvenile court had concluded with an award of temporary custody to the grandparents," and we stated that in the latter circumstance "the legal custodians' petition seeking a modification of that custody must be brought in superior court." Id. at 736, n. 4 (citing *In the Interest of C. C.*, 193 Ga. App. 120, 121 (387 SE2d 46) (1989)).

 Rather than being analogous to *Segars*, the instant case presents the circumstance distinguished by *Segars* — the deprivation action in juvenile court concluded with the award of long-term temporary legal custody to Dunbar. I disagree that the case remains a pending deprivation proceeding until A. L. turns 18 in 2024. The implication, through the majority's use of the term "physical custody," that another person or entity will retain legal custody of the child during the order's duration, is unfounded. The juvenile court awarded "legal custody and control" of A. L. to Dunbar, making Dunbar the child's temporary legal custodian.[5] See generally *Edgar v. Shave*, 205 Ga. App. 337, 338-339 (2) (422 SE2d 234) (1992) (holding that deprivation order had conveyed to party status of temporary legal custodian and noting that OCGA § 15-11-2 (5) defines "custodian" to include a person to whom legal custody of the child has been given by order of a court). Under the juvenile court's order, the court's role over the remaining years of A. L.'s minority would be to receive a report every 36 months regarding Dunbar's continued qualification

---

 [5] I do not disagree with the majority's conclusion that Dunbar is not a "legal custodian" as that term is defined under the Georgia Child Custody Intrastate Jurisdiction Act (OCGA § 19-9-20 et seq.), and thus that the Act is not implicated in this case. See generally *Gordon v. Gordon*, 269 Ga. App. 224, 225 (2) (603 SE2d 732) (2004).

to care for her. Such a monitoring role would exist in any grant of temporary custody under OCGA § 15-11-58 (i). See OCGA § 15-11-58 (i) (2).

I find this case analogous to *Wiepert v. Stover*, 298 Ga. App. 683 (680 SE2d 707) (2009), in which two sets of nonparent relatives of a child filed competing petitions for permanent custody in superior court during the pendency of a deprivation proceeding in juvenile court. In *Wiepert*, as here, the superior court did not enter an order transferring jurisdiction over the permanent custody petitions to juvenile court, and the petitions for permanent custody were not deprivation petitions. Under these circumstances, we held in *Wiepert* that the superior court did not err in exercising jurisdiction over the petitions for permanent custody. I believe that we should reach the same result here.

I am authorized to state that Presiding Judge Barnes and Judge Mikell join in this dissent.

DECIDED NOVEMBER 8, 2011 — 

*Bruce W. Phillips*, for appellant.

*Dupree & Kimbrough, Hylton B. Dupree, Jr., Ronne G. Kaplan, Jean M. Kutner*, for appellees.