727 S.E.2d 127 (2012)
315 Ga. App. 566
In the Interest of J.C.W. and J.C.W., Children et al.
No. A11A2054.
Court of Appeals of Georgia.
March 8, 2012.
Certiorari Denied June 11, 2012.
*128 Janine Marie Carson, for Tina Wilson.
James B. Outman, Diana Rugh Johnson, for Frederick Williams.
BOGGS, Judge.
A mother appeals from a superior court order granting the petition of foster parents to terminate her parental rights with regard to her two-year-old twins, after the juvenile court had already issued an order placing custody of the twins with their maternal aunt and uncle until their eighteenth birthdays.[1] The mother contends on appeal that: (1) the superior court lacked jurisdiction; (2) the doctrine of res judicata barred the foster parents' petition to terminate; (3) the legal custodians of the children should have been made parties to and received notice of the termination and adoption proceedings; and (4) the superior court erred by terminating her rights based upon sealed juvenile court orders unlawfully in the possession of the foster parents' attorney. Based on our conclusion that the superior court lacked jurisdiction because the juvenile court had already taken jurisdiction of the issue, we vacate its order terminating the mother's parental rights.

Juvenile Court Proceedings
The complicated procedural history of this case begins with the twins' birth on February 10, 2009. Shortly after their birth, the twins, along with their 16-month-old brother, were placed in DFACS' temporary legal custody by the Juvenile Court of Fulton County. On March 22, 2009, the twins and their older brother were placed with the foster parents, who were not interested in adopting the children at that time. When the foster parents became overwhelmed by caring for three very young children, DFACS initially determined that it would move all three children to another home, but later decided to move only the older child to another home. The foster mother testified that the older child "had some disciplinary issues, you know, acting out."
During a hearing on June 3, 2009, the mother stipulated to the deprivation petition filed by DFACS. On July 9, 2009, the juvenile court issued an order finding the children deprived based upon findings that the mother did not have adequate housing for herself and the children, that she did not have adequate income to support herself and the children, that the mother "has mental health issues,"[2] that one of the twins was diagnosed "as failure to thrive," that the mother allowed one of the twins to fall out of her lap causing visible physical injuries, and that the mother failed to cooperate with DFACS. The mother did not appeal the juvenile court's deprivation order.
In April of 2010, the maternal aunt and uncle learned that the twins were in DFACS custody[3] and were asked to consider taking custody of the three children. After praying about it and discussing it with other members of the extended family, they agreed to take in the children. The home evaluation process began in April 2010, and the aunt and uncle were approved in October 2010.
DFACS began scheduling visits between the twins and their aunt and uncle in August 2010. Beginning in October, the aunt and uncle had two-hour visits that progressed into all-day, overnight, and then weekend visits. On November 5, 2010, the twins' older brother was placed with them. The foster mother expressed to DFACS at some point during the visitations that she did not like the relatives and admitted being irritated that the mother was present during one of the twins' visits with the aunt and uncle.
On August 10, 2010, DFACS moved to terminate the parental rights of both parents. Following a hearing on September 23, 2010, the juvenile court noted that the mother had complied with the following portions of her reunification plan: "the mother has *129 completed the psychological evaluation, is participating in parenting classes, visits the children and participates in therapy." It also noted, however, that "returning to the home would be contrary to the welfare of the children because the mother has not completed parenting classes and is without appropriate housing for herself and her children" and "has not provided verifiable documentation of employment or the means to provide for the financial needs of the children." On October 8, 2010, the juvenile court scheduled DFACS' petition for the termination of parental rights for a hearing on November 18, 2010.
On November 15, 2010, the foster parents moved to intervene in the juvenile court proceeding and sought custody of the twins based upon their intention to adopt following a termination of parental rights. On November 16, 2010, DFACS moved the juvenile court to cease all reunification efforts based upon a permanency plan to place all three children with the maternal aunt and uncle. In the motion, DFACS also took the position that "[t]ermination of parental rights is not in the best interest of the children" based upon the permanency plan to place all of the children with fit and willing relatives. On the same date, DFACS petitioned the court to modify custody and place all three siblings with the aunt and uncle until their eighteenth birthdays. Neither of these petitions references a stipulation of non-reunification by the mother.
At the beginning of the hearing, the child advocate attorney asked the associate juvenile judge sitting "pro hac vice" for a continuance "so that Judge Hodges can hear the termination," to which the associate judge responded "okay." Counsel for DFACS then asked the judge to rule on the pending motion for non-reunification and modification of custody to the uncle and aunt. DFACS' counsel declined to dismiss its pending petition to terminate parental rights, stating, "We'll make that determination once the [c]ourt has ruled on the motion for non-reunification and the petition to modify." Counsel for the mother stated that she had "no objection to the motion for non-reunification," and "stipulate[d] to the petition to modify custody" to the aunt and uncle.
Based on the mother's consent, the juvenile court orally granted DFACS' motion for nonreunification before ruling on the custody issues. The judge then declined to continue the custody issues until the juvenile judge who had been handling the case from the beginning could hear it. After hearing testimony from the foster mother and the maternal uncle on issues of custody only, the juvenile judge ruled from the bench and denied DFACS' motion to modify custody of the twins to the aunt and uncle and granted custody of the twins to the foster parents over the objection of the mother and DFACS.[4] It entered a written order to this effect on January 19, 2011 at 3:01 p.m., which also relieved DFACS of custody over the twins. The associate judge hearing the motions on custody and non-reunification at no time issued a ruling on DFACS' pending petition to terminate the parental rights and evidence was not submitted on this issue.
In a written order entered the same day at 3:02 p.m., the judge found that "[t]he mother, through counsel, consented to the Motion [for non-reunification]. Based on the consent of mother through counsel, the Court finds that [the mother] of the ... children, has failed to achieve the goals in the case plan designed to enable her to be reunited with her children." After a recitation of facts concerning the mother's fitness and conduct stated in the motion, for which no evidence was introduced in the hearing, the juvenile judge concluded that parental misconduct existed within the meaning of OCGA § 15-11-94(b)(4)(A)(i)-(iv). It then concluded, that "non-reunification of these children with their parents is in their best interest. Therefore, reunification efforts by the Department shall cease, in accordance with OCGA § 15-11-58(h). Custody of the children remains with [DFACS]."[5] (Emphasis supplied.) (Emphasis supplied.)
*130 On January 13, 2011, the mother moved for rehearing under OCGA § 15-11-21(e). The chief juvenile court judge granted the motion for rehearing on February 1, 2011. On February 28, 2011, the chief juvenile judge issued an 11-page order in which she conducted a de novo review under Uniform Juvenile Court Rule 19.2.[6] In this order, the chief juvenile judge concluded "that it is not in the best interest of [the children] to be separated from their sibling by being placed with the foster parents, but it is in the best interest of all three children to be placed together which was the original plan of the Department when they placed all three children with the foster parents and they were separated only at the request of the foster parents." Additionally, it concluded that "[b]y failing to adopt the permanency plan of the Motion for Non-Reunification, the court failed to give proper consideration to the agreement reached between the mother and the Department wherein the permanency plan was changed to placement with a fit and willing relative." And, according to the chief juvenile judge, additional error resulted from the court hearing evidence on a motion to change custody to the foster parents when the non-reunification motion it had orally granted included a permanency plan for placement with the uncle and aunt. "When the court placed the twins with the foster parents, the mother did not get the benefit of her bargain and now risks losing the children forever as the foster parents wish to adopt." Based on these findings, the chief juvenile judge vacated the associate juvenile judge's January 19, 2011 order and awarded custody to the aunt and uncle under OCGA § 15-11-58(i) until the twins' eighteenth birthdays.
In In the Interest of J.C.W., 311 Ga.App. 894, 717 S.E.2d 512 (2011), we vacated the chief juvenile judge's February 28, 2011 order based upon her failure to make a finding that "referral for termination of parental rights and adoption was not in the twins' best interest." See OCGA § 15-11-58(i). After the case was remanded, the chief juvenile judge issued an order on October 21, 2011, in which she found that termination of parental rights would not be in the best of the children. On October 31, 2011, the child advocate attorney filed a notice of appeal from this order, and that appeal is now pending in this court as Case No. A12A1341.

Superior Court Proceedings
On December 15, 2010, following the oral grant of their request for custody, the foster parents filed a petition for adoption in Fulton County Superior Court that also sought termination of the mother's parental rights.[7] This petition was not served on DFACS or the aunt and uncle, and the foster parents did not obtain consent for the adoption from DFACS before filing it. See OCGA §§ 19-8-3(b) and 19-8-13(a)(2); Owen v. Watts, 303 Ga.App. 867, 869(2), 695 S.E.2d 62 (2010).
On March 9, 2011, the foster parents sought termination of parental rights through a summary judgment motion relying upon certified copies of petitions and orders filed in the juvenile court.[8] The superior court held a hearing on March 11, 2011, and issued orders the same day terminating parental rights and granting the foster parents' petition for adoption of the twins. The order terminating parental rights was based upon the facts contained in the certified juvenile court records, not evidence submitted during the hearing. The juvenile court records reviewed by the superior court did not include any DFACS internal records, such as case plans or reports of any psychiatric assessments of the mother.
1. In this appeal, the mother asserts that the superior court lacked jurisdiction to rule *131 on the foster parents' petition to terminate. We agree.
OCGA § 15-11-28(a)(2)(C) provides that juvenile courts
"shall have exclusive original jurisdiction over juvenile matters and shall be the sole court for initiating action ... [i]nvolving any proceedings ... [f]or the termination of the legal parent-child relationship ... other than that in connection with adoption proceedings under Article I of Chapter 8 of Title 19, in which the superior courts shall have concurrent jurisdiction to terminate the legal parent-child relationship...."
In cases involving issues of concurrent jurisdiction between juvenile courts and superior courts, Georgia courts have repeatedly held that "the first court taking jurisdiction will retain it." Segars v. State, 309 Ga.App. 732, 735, 710 S.E.2d 916 (2011). See also Breeden v. Breeden, 202 Ga. 740, 741(6), 44 S.E.2d 667 (1947); Dunbar v. Ertter, 312 Ga.App. 440, 441, 718 S.E.2d 350 (2011), cert. granted (Case No. S12C0452, March 5, 2012); Long v. Long, 303 Ga.App. 215, 218-219, 692 S.E.2d 811 (2010). The policy behind this rule "is to keep down litigation and avoid a multiplicity of suits." Hood v. Cooledge, 39 Ga.App. 476, 480, 147 S.E. 426 (1929).
The competing orders issued concerning the mother's parental rights regarding the twins demonstrate the wisdom of this rule. The juvenile court has issued an order concluding that termination of the mother's parental rights is not in the best interest of the children, and the superior court has entered an order reaching the opposite conclusion. Because it is undisputed that a termination petition was first filed in juvenile court, we conclude the superior court erred by exercising jurisdiction over the issue of termination. See Dunbar, supra; Segars, supra; Long, supra.[9]
2. The remaining enumerations of error are rendered moot by our holding in Division 1.
Judgment vacated.
MIKELL, P.J. and DILLARD, J., concur.
NOTES
[1] After terminating the parental rights of both parents, the superior court granted the foster parents' application for adoption of the twins.
[2] In the petition to which the mother stipulated, DFACS alleged that the mother suffers from schizophrenia and bipolar disorder.
[3] It appears that the mother initially instructed DFACS not to contact her family members because she wanted to be reunified with her children.
[4] The juvenile judge ordered that the twins' older brother be placed with the aunt and uncle.
[5] This finding regarding DFACS' custody contradicts the order entered one minute before that granted custody to the foster parents. The previous order stated that DFACS "is relieved of any further custodial responsibilities towards the children."
[6] This rule provides: "A rehearing of an associate judge's order under OCGA § 15-11-21(e) will be by a review by the juvenile court judge of the pleadings, recorded, electronic, or written transcript and evidence of the original proceeding to be obtained at the request and expense of the party appealing said ruling of the associate judge. The standard of proof for such review shall be the same as for the original case."
[7] It appears this case was not assigned to a Family Division judge as required by Fulton County Superior Court Family Division Case Management Rule 100-2, 100-3, and 400-1.
[8] The certified copies of the juvenile court records were provided to the foster parents' counsel by the child advocate attorney who represented the children in juvenile court.
[9] Our opinion in Snyder v. Carter, 276 Ga.App. 426-427, 623 S.E.2d 241 (2005), does not require a different result because in Snyder, the termination petition was filed in juvenile court after a petition for termination and adoption was filed in superior court. The issue before us in Snyder was whether a pending deprivation proceeding precluded a superior court from exercising jurisdiction over the adoption and termination petition. Additionally, the Snyder court relied upon a decision, Edgar v. Shave, 205 Ga. App. 337, 422 S.E.2d 234 (1992), issued at a time when the superior court had exclusive rather than concurrent jurisdiction over termination petitions filed in connection with adoption. Snyder, 276 Ga.App. at 427, 623 S.E.2d 241. Compare OCGA § 15-11-5(a)(2)(C) (1992) with current OCGA § 15-11-28(a)(2)(C).