**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**November 20, 2012**

# In the Court of Appeals of Georgia

A12A0981. ALIZOTA v. STANFIELD et al.                    DO-045

DOYLE, Presiding Judge.

Emmanuel Alizota appeals from the trial court's entry of judgment terminating his parental rights and granting a petition of adoption of S. K. filed by Ryan and Melissa Stanfield.[1] Alizota argues that the evidence was insufficient to support the trial court's order. For the reasons that follow, we vacate the superior court order terminating Alizota's parental rights and granting the Stanfields' petition for adoption.

The record reflects that on December 9, 2009, M. K. was arrested for driving under the influence while S. K., approximately six months old at the time, was in her

---

[1] The trial court also terminated the rights of M. K., S. K.'s biological mother, but she is not a party to this appeal.

vehicle. . The Department of Family and Children Services ("the Department") took S. K. into shelter care and then placed her with the Stanfields pending a deprivation hearing. On January 22, 2010, the Juvenile Court of Fayette County entered an order adjudicating S. K. deprived as to the mother on the grounds of neglect, lack of proper parental care and supervision, and drug use. At this time, the Department began formulating a reunification case plan, in which they also included Alizota, who was the putative father of S. K.

Alizota thereafter petitioned to legitimate the child, and the juvenile court granted his petition in March 2010. Alizota and the mother eventually consented to non-reunification, and long-term temporary custody of S. K. was given to the Stanfields, pursuant to OCGA § 15-11-58 (i). The parties moved for non-reunification with relinquishment of custody before the juvenile court, which entered a consent order dated June 14, 2010, nunc pro tunc April 15, 2010, and an amended consent order dated August 18, 2010, nunc pro tunc June 14, 2010, finding that Alizota had agreed to relinquish custody of S. K., and granting custody to the Stanfields until S. K. reached 18 years old. The order also found that Alizota wished to remain active in S. K.'s life, and the court ordered supervised visits for Alizota, finding that he could later move for unsupervised visits with the child. Finally, in line with the

2

statutory provisions of OCGA § 15-11-58 (i) (2) (A), the juvenile court ordered the Department to review S. K.'s placement every 36 months. From August 2010 to December 2010, Alizota, who previously had completed parenting classes, visited with S. K., first on a supervised basis and later on an unsupervised basis, and he also remitted child support to the Stanfields, had begun to bond well with S. K., and had no positive drug screens.

Nevertheless, on December 3, 2010, the Stanfields filed a petition for adoption of S. K. in the Superior Court of Fayette County, at which time S. K. was two days shy of being 18 months old. Alizota answered the petition, challenged the Stanfield's contentions that S. K. continued to be deprived as to him or that it was in S. K.'s best interest to terminate his parental rights, asked the superior court to deny the adoption petition, and counterclaimed for permanent custody of S. K.

On May 20, 2011, the superior court entered its order terminating Alizota's parental rights and ordered the adoption of S. K. by the Stanfields. This direct appeal followed. This Court, however, cannot review the merits of the superior court's order because that court did not have jurisdiction to terminate Alizota's parental rights and thereby rule on the Stanfields' adoption petition. As this Court previously explained

3

in *In the Interest of J. C. W.*,[2] in cases like this one, "involving issues of concurrent jurisdiction between juvenile courts and superior courts, Georgia courts have repeatedly held that the first court taking jurisdiction will retain it. The policy behind this rule is to keep down litigation and avoid a multiplicity of suits."[3] While it is true that a superior court has concurrent jurisdiction over termination proceedings in connection with a petition for adoption,[4] in this case, the Stanfields' adoption petition alleged that Alizota's parental rights should be terminated on the basis that S. K. was deprived by Alizota.[5] The juvenile court, however, previously had exercised jurisdiction over the deprivation case involving Alizota and S. K., and the proceedings in that court were suspended only by the entry of the temporary long-

---

[2] 315 Ga. App. 566 (727 SE2d 127) (2012).

[3] (Citations and punctuation omitted.) Id. at 572 (1) (involving a similar circumstance of the foster parents petitioning a superior court for adoption of twins after the mother had signed a consent for non-reunification with the understanding that she would be allowed visitation with the children).

[4] See OCGA § 15-11-28 (a) (2) (C). See also *In the Interest of C. C.*, 193 Ga. App. 120, 121 (1) (387 SE2d 46) (1989) (holding that juvenile court did not have jurisdiction because petition was one for permanent custody and did not arise from allegation of deprivation).

[5] Compare with *Wiepert v. Stover*, 298 Ga. App. 683, 685-686 (3) (680 SE2d 707) (2009); *In the Interest of C. C.*, 193 Ga. App. at 121 (1).

term custody agreement entered into by the consent of both Alizota and the Stanfields. Thus, the superior court erred by exercising jurisdiction over the Stanfields' petition, and instead, the juvenile court should have presided over the termination of Alizota's parental rights in the first instance.[6]

Accordingly, we vacate the trial court's May 20, 2011 order terminating Alizota's parental rights and granting the Stanfields' adoption petition.

*Judgment vacated. Andrews, J. concurs. Boggs, J., concurs specially and in judgment only.*

---

[6] See *In the Interest of J. C. W.*, 315 Ga. App. at 572 (1). Compare with *Ertter v. Dunbar*, __ Ga. __ (__ SE2d __) (Case No. S12G0452; decided on Nov. 19, 2012) (superior court did not err by exercising jurisdiction over petition for permanent custody even though the juvenile court previously had entered an order for custody under OCGA § 15-11-58 (i) because juvenile court did not have jurisdiction to award permanent custody).

A12A0981. ALIZOTA v. STANFIELD, et al.


BOGGS, Judge, concurring specially and in the judgment only.

I concur in the judgment only and write separately to explain that the superior court lacked jurisdiction to terminate parental rights based upon the order issued by the juvenile court under OCGA § 15-11-58 (i). This Code section authorizes a juvenile court to "enter a custody order which shall remain in effect until the child's eighteenth birthday" in cases in which "referral for termination of parental rights and adoption is not in the best interest of the child." OCGA § 15-11-58 (i) (1).[1] In this case, the juvenile court's long-term custody order under OCGA § 15-11-58 (i)

_____

[1] This Code section also contains other prerequisites for entry of a long-term custody order.

2

required the Fayette County Department of Family and Children's Services to review the child's placement every 36 months and provide a report to the juvenile court. The juvenile court therefore continued to exercise jurisdiction over the issue of termination of parental rights through its OCGA § 15-11-58 (i) order.

As the Supreme Court of Georgia recently explained, "[t]he doctrine of priority jurisdiction, a version of which is embodied in OCGA § 23-1-5.2, is invoked to determine which court with concurrent jurisdiction will retain that jurisdiction." *Ertter v. Dunbar*, __ Ga. __ (Case No. S12G0452, decided November 19, 2012). Juvenile courts and superior courts both have jurisdiction over petitions for termination of parental rights, but the superior court's concurrent jurisdiction is limited to cases involving adoption proceedings. See OCGA § 15-11-28 (a) (2) (C). In this case, the juvenile court exercised its jurisdiction first and continues to exercise its jurisdiction through the periodic review of its order issued under OCGA § 15-11-58 (i). It therefore retains jurisdiction over the issue of termination of parental rights.[2]

---

[2] As explained by this Court in *Interest of J. C. W.*, 315 Ga. App. 566 (727 SE2d 127) (2012),

> Our opinion in *Snyder v. Carter*, 276 Ga. App. 426-427 (623 SE2d 241) (2005), does not require a different result because in *Snyder*, the termination petition was filed in juvenile court *after* a petition for termination and adoption was filed in superior court. The issue before us in *Snyder* was whether a pending deprivation proceeding precluded

3

I also take this opportunity to note what appears to be a trend of increasing litigation regarding the application of concurrent jurisdiction between juvenile and superior courts. See *Ertter*, supra; *Interest of J. C. W.*, __ Ga. App. __ (Case No. A12A1341, decided November 27, 2012); *Interest of J. C. W.*, supra, 315 Ga. App. 566; *Segars v. State*, 309 Ga. App. 732 (710 SE2d 916) (2011); *Long v. Long*, 303 Ga. App. 215 (692 SE2d 811) (2010). For this reason, the General Assembly may desire to provide the bench and bar with additional guidance on the appropriate limits and application of each court's concurrent jurisdiction.

---

a superior court from exercising jurisdiction over the adoption and termination petition. Additionally, the *Snyder* court relied upon a decision, *Edgar v. Shave*, 205 Ga. App. 337 (422 SE2d 234) (1992), issued at a time when the superior court had *exclusive* rather than concurrent jurisdiction over termination petitions filed in connection with adoption. *Snyder*, 276 Ga. App. at 427. Compare OCGA § 15-11-5 (a) (2) (C) (1992) with current OCGA § 15-11-28 (a) (2) (C).
(Emphasis in original.) Id. at 572 n. 9.

4