294 Ga, 813
FINAL COPY

S13G0590.  STANFIELD et al. v. ALIZOTA.

THOMPSON, Chief Justice.

We granted certiorari to consider whether the Court of Appeals properly applied the principle of priority jurisdiction when it held that the Fayette County Superior Court lacked the jurisdiction to terminate Emmanuel Alizota's parental rights and erred in granting Ryan and Melissa Stanfield's petition for the adoption of S. K.   Alizota v. Stanfield, 319 Ga. App. 256 (734 SE2d 497) (2012).  The Court of Appeals determined that because the juvenile court had previously exercised jurisdiction over a deprivation proceeding involving Alizota and S. K. and had entered a temporary long-term custody agreement, the doctrine of priority jurisdiction deprived the superior court of jurisdiction over the termination proceeding. Id. at 258. Based on this determination, the Court of Appeals vacated the superior court's order and declined to consider Alizota's appeal on the merits.  This Court granted the Stanfields' petition for certiorari to consider the question of whether the Court of Appeals properly applied the principle of priority jurisdiction in this case.  See Ertter v. Dunbar, 292 Ga. 103 (734 SE2d 403) (2012).  For the reasons that follow, we find the Court of

Appeals erred in holding the superior court lacked jurisdiction over the termination proceeding.

The record reflects that on December 3, 2010, the Stanfields filed a petition in the superior court to adopt S. K., Melissa's 18-month-old niece who had been in their care for over a year after the Georgia Department of Family and Children Services (DFACS) removed her from her mother's custody and initiated deprivation proceedings in juvenile court. The Stanfields' petition for adoption sought the involuntary termination of the parental rights of both Alizota and S. K.'s biological mother.

Previously, on January 22, 2010, the Juvenile Court of Fayette County had adjudicated S. K. deprived as to her mother on the grounds of neglect, lack of proper parental care and supervision, and drug use. Thereafter, Alizota, S. K.'s biological father, filed a petition to legitimate her which the juvenile court granted in March 2010. Subsequently, however, both Alizota and S. K.'s mother consented to non-reunification, prompting DFACS to move for non-reunification with relinquishment of custody before the juvenile court. See OCGA § 15-11-58 ( i). Following a hearing, the juvenile court entered an order

2

dated June 14, 2010, nunc pro tunc to April 15, 2010,[1] finding, among other things, that S.K. continued to be deprived and that Alizota had agreed to non-reunification and to the relinquishment of custody to the Stanfields until S. K. reached 18 years of age. Additionally, the order instructed DFACS to review S. K.'s placement every 36 months as provided by OCGA § 15-11-58 (i) (2) (A), and required Alizota to pay child support while allowing him supervised visits with S. K. The order also provided Alizota the opportunity to obtain unsupervised visits upon further order of the court.

Evidence in the record shows Alizota completed parenting classes and, between August 2010 and December 2010, participated in both supervised and unsupervised visits with S. K. while remitting child support to the Stanfields. Nonetheless, the Stanfields filed their petition for adoption seeking the involuntary termination of his parental rights. Alizota answered the petition challenging the Stanfields' contentions that S. K. continued to be deprived as to him and that termination of his parental rights was in S. K.'s best interest. He asked that the petition for adoption be denied, and filed a counterclaim seeking permanent custody of S. K. After a lengthy hearing, the superior court

---

[1] This order was subsequently amended on August 18, 2010 to correct S. K.'s birthdate.

terminated the parental rights of both biological parents and granted the Stanfields' petition for adoption. Alizota appealed, arguing that the evidence was insufficient to support the trial court's order.

In its decision vacating the superior court's order in this case, the Court of Appeals correctly observed that in cases where the termination of parental rights is sought in connection with a petition for adoption, superior courts have concurrent jurisdiction with juvenile courts over termination proceedings. OCGA § 15-11-28 (a) (2) ( C). See Alizota, 319 Ga. App. at 258.[2] We disagree, however, with the Court of Appeals' conclusion that because the juvenile court in this case previously had exercised jurisdiction over a deprivation action involving Alizota and S. K. which culminated in the entry of a consent agreement awarding temporary long-term custody to the Stanfields pursuant to

_____

[2] While the applicable statutory authority gives juvenile courts exclusive original jurisdiction over deprivation actions and exclusive jurisdiction for the termination of parental rights in most cases, superior courts have concurrent jurisdiction to terminate parental rights when the termination is in connection with an adoption proceeding. See Ertter, 292 Ga. at 104-105; OCGA § 15-11-28 (a) (2) ( C). We note, however, that under recent comprehensive revisions to the Juvenile Code effective January 1, 2014, see Ga. L. 2013, p. 294, § 1/HB 242, OCGA § 15-11-28 has been repealed, and the new statute addressing the juvenile court's jurisdiction, OCGA § 15-11-10 (2) (D), no longer refers to the superior court as having concurrent jurisdiction in termination proceedings related to adoption, but provides instead that the juvenile court's exclusive original jurisdiction for the termination of parental rights "shall not affect the superior court's *exclusive* jurisdiction to terminate the legal parent-child relationship as set forth in Chapters 6 through 9 of Title 19." (Emphasis supplied.)

4

OCGA § 15-11-58 (i), the doctrine of priority jurisdiction prevented the superior court from exercising jurisdiction over a termination of parental rights proceeding in conjunction with the Stanfields' adoption petition.

The doctrine of priority jurisdiction provides that where different tribunals have concurrent jurisdiction over a matter, the first court to exercise jurisdiction will retain it. See OCGA § 23-1-5;[3] Ertter, 292 Ga. at 104. Invocation of the doctrine requires both the existence of concurrent subject matter jurisdiction by different courts, and the actual exercise of jurisdiction by one of the tribunals. Here, although the juvenile court was the first tribunal to take personal jurisdiction over S. K. for the deprivation action, it never took subject matter jurisdiction over the termination of S. K.'s parents' parental rights because no petition for termination was ever filed in the juvenile court. See In the Interest of C. M., 258 Ga. App. 387 (574 SE2d 433) (2002) (holding deprivation proceedings and termination of parental rights proceedings are separate and distinct). Nor was the deprivation case turned into a termination case by entry

---

[3] OCGA § 23-1-5 states:
Where law and equity have concurrent jurisdiction, whichever first takes jurisdiction shall retain it, unless a good reason shall be given for the interference of equity.

5

of the juvenile court's long-term temporary custody order under OCGA § 15-11-58 (i) (1).[4]  See OCGA §§ 15-11-54 to 15-11-58.1 (setting forth procedures and rules governing deprivation proceedings); OCGA §§ 15-11-93 to 15-11-106 (setting forth procedures and rules governing termination proceedings).  The juvenile code treats deprivation actions and termination actions separately, and the fact that a juvenile court is authorized to decide in a deprivation proceeding whether a "*referral* for termination of parental rights and adoption is not in the best interest of the child" as required by OCGA § 15-11-58 (i) (1) is not the same as being authorized to decide that the *actual* termination of parental rights is or is not in a child's best interests. Such a referral is not equivalent to filing a termination petition.  See OCGA § 15-11-94.

This Court's recent decision in <u>Ertter</u> is instructive as to the proper application of priority jurisdiction in this case.  In that case, the juvenile court presiding over a deprivation action entered a long-term temporary custody order

---

[4] OCGA § 15-11-58 (i) (1) provides:
> If the court has entered an order finding that reasonable efforts to reunify a child with his or her family would be detrimental to the child in accordance with subsection (h) of this Code section and if the court finds that referral for termination of parental rights and adoption is not in the best interest of the child, the court may, upon proper petition, enter a custody order which shall remain in effect until the child's eighteenth birthday.

6

pursuant to OCGA § 15-11-58 (i) which named the child's grandmother as custodian and was to remain in force until the child's eighteenth birthday subject to triennial reviews by the juvenile court. See Ertter, 292 Ga. at 103. Subsequently, the child's aunt and uncle petitioned the superior court for permanent custody, which was granted. Id. Similar to its reasoning in this case, the Court of Appeals determined on appeal that through entry of the long-term temporary custody order, the juvenile court had taken jurisdiction of essentially all custody issues throughout the child's minority and the superior court lacked jurisdiction to hear a separate permanent custody action. Id. at 104. This Court reversed, however, holding that

> [s]ince the superior court and the juvenile court did not have concurrent jurisdiction over the issue of permanent custody of the child, it was error for the Court of Appeals to rely on the principle of priority jurisdiction to hold that the superior court could not exercise jurisdiction of the Ertters' petition for permanent custody of the child.

7

Id. at 105. Additionally, this Court observed,

> [t]he juvenile court's authority to place a child in the custody of a "willing" and "qualified" relative is not authority to award permanent custody of the child, as the latter is determined by discerning the best interests of the child and not the willingness or the qualifications of a person to take temporary custody of the child.

Id.

Here, unlike in Ertter, the juvenile court potentially had concurrent jurisdiction with respect to the issue of termination of parental rights. Id. at 104-105. However, it is undisputed that a petition for termination of parental rights had never been filed in the juvenile court in this case. Compare In the Interest of J. C. W., 315 Ga. App. 566, 572 (727 SE2d 127) (2012). Moreover, the Stanfields were not parties to the deprivation proceedings in the juvenile court and were required to file their adoption petition in the superior court. See OCGA § 19-8-2 (a).[5]

---

[5] OCGA § 19-8-2 (a) provides:
> The superior courts . . . shall have exclusive jurisdiction in all matters of adoption, except such jurisdiction as may be granted to the juvenile courts.

As we find that the issue of termination of Alizota's parental rights was raised for the first time in conjunction with the Stanfields' adoption petition, we hold the doctrine of priority jurisdiction did not deprive the superior court of jurisdiction over the termination proceeding in this case. Accordingly, we reverse the judgment of the Court of Appeals and remand this case to that court for consideration of Alizota's appeal on the merits.

Judgment reversed and case remanded. All the Justices concur.

Decided March 17, 2014.

Certiorari to the Court of Appeals of Georgia – 319 Ga. App. 256.

James B. Outman, for appellants.

Justin B. Grubbs, for appellee.

Hester & Hester, Justin Y. Hester, Sherriann H. Hicks, Julie A. Wilkes Wisotsky, Kazmarek, Geiger & Laseter, Richard A. Horder, amici curiae.