**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RICKMAN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 26, 2019**

# In the Court of Appeals of Georgia

A18A1914. STATE OF GEORGIA v. RONALD WYTTENBACH et al.

RICKMAN, Judge.

The Georgia Department of Human Services (the Department) appeals the Cobb County superior court's February 8, 2018 "Order on Termination of Parental Rights and Custody," which terminated the parental rights of the mother, legal father, and biological father of two minor children and placed the children in the temporary physical custody of their foster parents, pending formal completion of an application for adoption assistance. The Department contends that the superior court's order is void because it did not have jurisdiction over this matter and that, even if it did have jurisdiction, the superior court erred in splitting custody between the Department and the foster parents. For reasons that follow, we vacate and remand.

The minor children involved in this case were the subject of several proceedings in the juvenile court and the superior court in Cobb County. The juvenile court proceedings included a dependency action, a termination of parental rights action, and a legitimation action.[1] The superior court proceedings included a legitimation action and an adoption action.[2]

At some point prior to March 8, 2016, a petition for dependency was filed with respect to the minor children in the Juvenile Court of Cobb County. In September 2016, the two minor children were adjudicated dependent and temporary custody and control of the children was awarded to the Department, acting through the Cobb County Department of Family and Children Services (DFACS). The juvenile court found that the mother had used illegal drugs, engaged in prostitution in a motel room where the children were located, left the children unattended in a motel room, failed to provide the children with proper clothing and shoes, and ultimately allowed people she met on social media to take the children to reside in their home. The children

---

[1] The record on appeal does not include all of the records from the juvenile court proceedings.

[2] The record on appeal does not include all of the records from the superior court legitimation action.

2

were placed in the custody of the foster parents in August 2016 and have remained in their care.

In August 2016, the Department filed a petition in juvenile court seeking to terminate the parental rights of the mother and biological father. In its petition, the Department noted that it had placed the children in a foster placement approved by Cobb County DFACS.

In March 2016, in the Superior Court of Cobb County, the biological father filed a legitimation petition, which was dismissed without prejudice for lack of prosecution. The biological father filed another legitimation petition in superior court in October 2017, as a renewal action of the previously-filed action. In the interim, in July 2017, the biological father filed a legitimation petition in juvenile court.

On August 28, 2017, the foster parents filed a petition in superior court to adopt the minor children. The mother intervened in the adoption action the next day. In their adoption petition, the foster parents sought to terminate the rights of the mother and legal father based on voluntary relinquishments of their rights, to terminate the rights of the biological father, and to adopt the minor children. The legal father executed a surrender of his parental rights and release for independent adoption on August 23, 2017. The mother executed a surrender of her parental rights and

release for independent adoption on August 29, 2017.[3] The mother also executed an affidavit in which she averred that, during her relationship with the biological father of her children, he did not have a job and did not contribute to their living expenses; he left Georgia for Iowa when they were evicted from their residence, while she was pregnant with their third child; and after he left, she had no money and nowhere to live, requiring her to beg for money to obtain motel rooms.[4]

Given the numerous actions pending in both courts, the superior court judge and the juvenile court judge conferred about the best course of action, and on December 7, 2017, the juvenile court issued an order staying the matters pending in the juvenile court until final resolution of the matters pending in the superior court, noting that resolution of matters pending in superior court would resolve or significantly impact matters pending in juvenile court. One of the stated goals of the stay was to achieve judicial economy and avoid the possibility of inconsistent judgments in different courts.

---

[3] The Department challenged the surrenders of both parents, arguing that they were not valid because the Department had not provided its consent. In a November 9, 2017 order, the superior court ruled that the surrender of rights and release for adoption of the mother and legal father were valid. That order has not been appealed.

[4] The third child was stillborn in February 2016.

Following a January 11, 2018 hearing on the biological father's legitimation petition, the superior court made the following findings with respect to the biological father: during his relationship with the mother, the biological father had been convicted of 11 charges, mostly family violence against the mother, and spent 484 days incarcerated; he never provided adequate support for the children, requiring the mother to resort to prostitution to support the family; he moved to Iowa when the mother and his children were homeless and destitute and the mother was pregnant with his child; he failed to support the children in any way since he left Georgia; and he has had minimal contact with the children. The court further found that the juvenile court had conducted a hearing in October 2017 and declined to place the children with the biological father in Iowa. The court also found that one of the children has experienced "escalating aggressive behavior" at school since his contact with the biological father. The superior court concluded that the biological father had abandoned his opportunity interest in the children and that he was an unfit parent; consequently, the court denied his petition to legitimate the children.[5]

_____

[5] The biological father did not appeal that order but filed a motion to set it aside, contending that the superior court lacked jurisdiction because the juvenile court was the first to exercise jurisdiction over his legitimation petition. The superior court denied the motion, noting that the superior court legitimation action was a renewal of an action filed prior to the juvenile court action; that the biological father had filed

Following an evidentiary hearing in the adoption action, in a February 8, 2018 order, the superior court terminated the parental rights of the mother and legal father based on their voluntary relinquishment of those rights, which both parents reaffirmed at the hearing.[6] The court also terminated the biological father's rights based on the findings and conclusions in its order denying the legitimation petition.[7] The court found the children were bonded to the foster parents, who were "excellent parents" and provided the best care for the children, but determined that an order of adoption could not be entered prior to the completion of an application for adoption assistance without causing a lapse in the significant benefits being received for the "special

---

his petition in superior court, alleging that jurisdiction was proper; and that no objection had been raised to jurisdiction during the hearing. The biological father sought discretionary review of that order, which this Court denied, and then filed a petition for certiorari in the Supreme Court of Georgia.

[6] The hearing transcript is not included in the record on appeal. As a result, the general rule is that we must assume that the trial court's findings are supported by sufficient competent evidence. See *Hensley v. Young*, 273 Ga. App. 687 (615 SE2d 771) (2005). But it is not the trial court's findings of fact that are disputed; the errors alleged are legal issues and, as a result, "the lack of a transcript is no barrier to an appellate consideration of the merits of this appeal." *Dept. of Human Resources v. Tabb*, 221 Ga. App. 766 (1) (472 SE2d 540) (1996).

[7] The biological father filed an application for discretionary appeal in this Court, seeking to appeal the superior court's February 8, 2018 order in the adoption case, but we dismissed the application for lack of jurisdiction. The biological father has also applied for certiorari in that case.

needs" of the children, and that the Department's assistance was needed to complete the application process. As a result, the court awarded the foster parents temporary physical custody of the children, pending completion of an application for adoption assistance, with temporary legal custody remaining with the Department pending a final decree of adoption.

A portion of the superior court's February 8, 2018 order enjoins the Department from certain activities and provides that

> [t]he Juvenile Court has issued a stay of the deprivation proceed[ing]s concerning these children until this matter is completed, including any appeal, therefore, The Department is ENJOINED from interfering in any way in the physical placement of the children with Petitioners. The Department is ENJOINED from arranging any contact or visitation between the children and [the biological father] or any of his relatives.

The Department appeals from that order, contending that the superior court lacked jurisdiction to enter it and that the superior court erred by ordering that legal and physical custody be split between the Department and the foster parents.

1. The foster parents moved to dismiss the appeal on three grounds. First, the foster parents contend the appeal must be dismissed because the Department was not

a party to the adoption action.[8] But because the superior court enjoined the Department from taking certain actions with respect to the minor children, the Department has standing to appeal the injunctive portion of the order. See *BEA Systems v. WebMethods*, 265 Ga. App. 503, 509 (1) (595 SE2d 87) (2004) ("when an injunction is entered affecting and restraining a nonparty, it has standing to appeal such injunction"). Second, the foster parents contend that the order is not appealable under OCGA § 5-6-34 (a) (1) because the action is still pending in the superior court. We have previously recognized that such an order is directly appealable under OCGA § 5-6-34 (a) (11). See *Bowman v. Bowman*, 345 Ga. App. 380, 381, n.4 (811 SE2d 103) (2018) (where issue on appeal involved the trial court's jurisdiction over the custody dispute and order awarding temporary custody, case could have been brought as a direct appeal). And third, the foster parents contend that dismissal is appropriate because the Department failed to have the record transmitted to this Court in a timely manner. This Court, however, cannot dismiss an appeal for "failure of any party to cause the transcript of evidence and proceedings to be filed within the time allowed

---

[8] We note that the Department filed motions and pleadings in the adoption case via special appearance but only moved to intervene the day of the hearings on the legitimation petition and the adoption petition; that motion was denied as untimely.

by law or order of court." OCGA § 5-6-48 (c). Accordingly, the foster parents' motion to dismiss is denied.

2. The Department contends that the superior court lacked jurisdiction over this matter under the doctrine of priority jurisdiction. The Department argues that because the juvenile court took jurisdiction over the termination of parental rights issue first, the superior court order at issue is void.

"The doctrine of priority jurisdiction provides that where different tribunals have concurrent jurisdiction over a matter, the first court to exercise jurisdiction will retain it." *Stanfield v. Alizota*, 294 Ga. 813, 815 (756 SE2d 526) (2014). "Invocation of the doctrine requires both the existence of concurrent subject matter jurisdiction by different courts, and the actual exercise of jurisdiction by one of the tribunals." Id. A version of the doctrine of priority jurisdiction is codified in OCGA § 23-1-5, which provides that "[w]here law and equity have concurrent jurisdiction, whichever first takes jurisdiction shall retain it, unless a good reason shall be given for the interference of equity."

Pursuant to OCGA § 15-11-10 (3) (D), the juvenile court

shall be the sole court for initiating action [i]nvolving any proceedings. . . [f]or the termination of the legal parent-child relationship and the

9

rights of the biological father who is not the legal father of the child in accordance with Article 4 of this chapter; provided, however, that such jurisdiction shall not affect the superior court's exclusive jurisdiction to terminate the legal parent-child relationship and the rights of a biological father who is not the legal father of the child as set forth in Chapters 6 through 9 of Title 19.

And as set forth in Chapter 7 of Title 19, a parent's right to a child may be terminated by "[a] superior court order terminating parental rights in an adoption proceeding" or "[a] superior court order terminating parental rights of the legal father or the biological father who is not the legal father of the child in a petition for legitimation." OCGA §§ 19-7-1 (b) (7), (b) (8).

The language of OCGA § 15-11-10 (3) (D), first effective in January 2014 as part of the new Juvenile Code, represents a change in the law. Ga. L. 2013, pp. 308, 514, §§ 1-1, 5-1.[9] The prior version of the statute provided that the juvenile court had exclusive jurisdiction over proceedings involving the termination of the legal parent-child relationship and the rights of the biological father who is not the legal father of the child, except in connection with adoption proceedings, in which the

---

[9] This subsection was initially enacted as OCGA § 15-11-10 (2) (D) and subsequently renumbered as OCGA § 15-11-10 (3) (D). Ga. L. 2015, pp. 540-541, § 1-2.

10

superior courts had concurrent jurisdiction to terminate the legal parent-child relationship and the rights of the biological father who is not the legal father of the child. See former OCGA § 15-11-28 (a) (2) (C). Currently, the statute provides that the superior court's exclusive jurisdiction to terminate parental rights in an adoption proceeding or a legitimation proceeding shall not be affected by the juvenile court's exclusive jurisdiction to terminate parental rights in a termination of parental rights proceeding. We now consider what this revision means in terms of determining the applicability of the doctrine of priority jurisdiction.

When considering the meaning of a statute,

we presume that the General Assembly meant what it said and said what it meant. To that end, we afford the statutory text its plain and ordinary meaning, we view the statutory text in the context in which it appears, and we read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. Applying these principles, if the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end.

(Citation and punctuation omitted.) *In the Interest of K. B.*, 347 Ga. App. 694, 695-696 (820 SE2d 732) (2018).

11

Based on a plain reading of OCGA § 15-11-10 (3) (D) as written, the superior court not only has exclusive jurisdiction to terminate parental rights in an adoption proceeding, but its jurisdiction in that context is not altered by the fact that the juvenile court has exclusive jurisdiction to terminate parental rights in a termination of parental rights proceeding. Thus, the doctrine of priority jurisdiction would not apply here because the superior court had exclusive jurisdiction to terminate parental rights in the adoption case, and the juvenile court's jurisdiction in the termination of parental rights case had no impact on the superior court's ability to exercise its jurisdiction.[10] Accordingly, the trial court had jurisdiction to enter the February 8, 2018 Order on Termination of Parental Rights and Custody.

---

[10] We note that our ruling does not conflict with the policy underlying the doctrine of priority jurisdiction, "to keep down litigation and avoid a multiplicity of suits" and to avoid inconsistent rulings on an issue, see *In the Interest of J. C. W.*, 315 Ga. App. 566, 572 (1) (727 SE2d 127) (2012), because the juvenile court has made no ruling on the Department's termination of parental rights petition and, in consideration of the various matters pending in both courts, stayed the proceedings in the juvenile court for the specific purpose of achieving judicial economy and avoiding the possibility of inconsistent rulings or judgments. In addition, the doctrine would not otherwise be applicable to the termination of the legal father's parental rights because he surrendered his parental rights in connection with the adoption action in superior court before any petition to terminate his parental rights was filed in juvenile court. See *Snyder v. Carter*, 276 Ga. App. 426, 427-428 (623 SE2d 241) (2005).

12

3. The Department contends that the superior court erred in splitting custody between the Department and the foster parents. Relying on *In the Interest of A. N.*, 281 Ga. 58, 59 (636 SE2d 496) (2006), the Department argues that a trial court cannot order that the legal and physical custody of a deprived child be divided between the Department and a party unilaterally chosen by the court, and that the superior court infringed upon the Department's right to choose where the minor children would reside.

Here, although the children were initially placed with the foster parents by the Department, not the superior court, and we recognize that the superior court sought to maintain the status quo for the laudable goal of ensuring that the children maintained the benefits being received for their "special needs," the court cannot award legal custody to the Department and then award physical custody to the foster parents. "Legal custody" means a legal status created by court order, and includes "[t]he right to determine where and with whom the child shall live. . . ." OCGA § 49-5-3 (11) (D).[11] When the Department is awarded legal custody, "any effort by the court to dictate placement of physical custody is 'merely exhortatory and not

[11] The rights afforded by an award of legal custody are, however, subject to judicial oversight and review pursuant to OCGA § 15-11-212. OCGA § 49-5-3 (11).

13

binding.'" (Citation omitted.) *In the Interest of A. N.*, 281 Ga. at 59. Thus, by maintaining legal custody with the Department and enjoining it from interfering with the children's physical placement, the court's order "infringed upon the Department's authority to determine the physical placement of children within its custody." *Long v. Long*, 303 Ga. App. 215, 220 (2) (692 SE2d 811) (2010).[12] The appealed order is therefore vacated and the case remanded with direction that a new order be entered consistent with this opinion.

*Judgment vacated and case remanded. McFadden, P. J., and Markle, J., concur.*

---

[12] We note that the Department cannot change the placement from the foster parents to the biological father because the juvenile court has already declined to make that change and has stayed all relevant matters until final resolution of the matters pending in superior court or further order of that court. And there is no indication in the Department's brief or the record before us that the Department seeks to change the children's placement from the foster parents to the mother or the legal father.